IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MICHAEL A. WHITE,           §
TDCJ #1215416,              §
                           §
        Petitioner,        §
                           §
v.                         §        CIVIL ACTION NO. H-07-2039
                           §
NATHANIEL QUARTERMAN, Director,  §
Texas Department of Criminal Justice -  §
Correctional Institutions Division,  §
                           §
        Respondent.        §

## MEMORANDUM AND ORDER

State inmate Michael A. White (TDCJ #1215416), has filed a petition for a federal

writ of habeas corpus under 28 U.S.C. § 2254 to challenge a state court felony conviction.

The respondent has filed an answer, which argues that the petition should be dismissed

because White is not entitled to relief.  (Doc. # 14).   White has filed a reply.  (Doc. # 15).

After considering all of the pleadings, the state court records, and the applicable law, the

Court dismisses this case for reasons set forth below.

## I.    BACKGROUND

On November 21, 2003, a State grand jury returned an indictment against White in

cause number 963758, charging him with committing felony retaliation by threatening to

murder a prospective witness who had reported the occurrence of a crime.  On January 13,

2004, a grand jury returned another indictment against White in cause number 967358,

charging him with committing aggravated assault with a deadly weapon, namely, a knife.

The State enhanced both indictments with allegations that White had at least one other prior felony conviction before he committed the charged offense.

On January 16, 2004, White pleaded guilty to the retaliation charges lodged against him in cause number 963758.  On that same day, White also pleaded guilty to the aggravated assault charges lodged against him in cause number 967358.  The 208th District Court of Harris County, Texas, found White guilty as charged in both cases and sentenced him to serve concurrent terms of four years and six years of imprisonment in the respective cases. White did not file an appeal from either conviction.

On June 16, 2007,[1] White filed the pending federal petition for a writ of habeas corpus to challenge his conviction for aggravated assault in cause number 967358.[2]  In this petition, White claims that his counsel was ineffective for failing to investigate his mental health history or to inform the trial court of his mental state.  White contends, therefore, that his guilty plea was involuntarily made as a result.[3]  The respondent argues that the petition must

---

[1]     The Clerk's Office recorded the petition as filed on June 19, 2007, but it is dated June 16, 2007.  Under the mail-box rule, courts in this circuit treat the date a *pro se* prisoner deposits a federal petition in the mail as the filing date.  *See Fisher v. Johnson*, 174 F.3d 710, 712 n.8 (5th Cir. 1999) (citing *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (per curiam)), *cert. denied*, 531 U.S. 1164 (2001).  Because White indicates that he placed his pleadings in the prison mail system on June 16, 2007, his petition is presumed filed on that date.

[2]     White does not challenge his conviction in cause number 963758 for felony retaliation.

[3]     The petitioner proceeds *pro se* in this case.  Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Under this standard, pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See id*; *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).

be dismissed because it is barred by the governing one-year statute of limitations. Alternatively, the respondent notes that White's claims were soundly rejected on state habeas corpus review and argues that White fails to show that he is entitled to relief under the governing federal habeas corpus statutes. White concedes that the petition is untimely, but asks for equitable tolling. The parties' contentions are addressed below, beginning with the issue of limitations.

## II.    THE ONE-YEAR STATUTE OF LIMITATIONS

According to the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), all federal habeas corpus petitions filed after April 24, 1996, are subject to a one-year limitations period found in 28 U.S.C. § 2244(d)(1). Because the pending petition was filed well after April 24, 1996, the one-year limitations period clearly applies. *See Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

In this instance, White challenges his guilty plea to charges of aggravated assault with a deadly weapon and the judgment entered against him on January 16, 2004. The statute of limitations for federal habeas corpus review of White's claims began to run pursuant to 28 U.S.C. § 2244(d)(1)(A), at "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Although White did not file an appeal, his time to do so expired thirty days later, on or about February 15, 2004. *See* TEX. R. APP. P. 26.2(a)(1). That date triggered the statute of limitations, which expired one year later on February 15, 2005. White's pending petition, dated June 16, 2007, is late

3

by more than two years and is therefore time-barred unless he can show that a statutory or equitable exception applies.

### A.     Statutory Tolling

Under 28 U.S.C. § 2244(d)(2), the time during which a "properly filed" application for state habeas corpus or other collateral review is pending shall not be counted toward the limitations period. *See Artuz v. Bennett*, 531 U.S. 4 (2000). The state court records show that White challenged his guilty plea by filing a state habeas corpus application on October 23, 2006, which the Texas Court of Criminal Appeals denied on March 21, 2007. *See Ex parte White*, No. 67,070-01 (Tex. Crim. App.). Because this state habeas corpus proceeding was filed well after the limitations period had already expired, it has no tolling effect for purposes of § 2244(d)(2). *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (noting that the statute of limitations is not tolled by a state habeas corpus application filed after the expiration of the limitations period).

White presents no other basis for statutory tolling and the record fails to disclose any. In that regard, White has not alleged that he was subject to state action that impeded him from filing his petition in a timely manner. *See* 28 U.S.C. § 2244(d)(1)(B). Further, there is no showing of a newly recognized constitutional right upon which the petition is based; nor is there a factual predicate for the claims that could not have been discovered previously if the petitioner had acted with due diligence. *See* 28 U.S.C. § 2244(d)(1)(C), (D). Accordingly, there is no statutory basis to save the petitioner's late-filed claims.

### B.     Equitable Tolling

4

Conceding that his petition is untimely, White seeks equitable tolling because he suffers from a mental impairment and because he lacks legal training or adequate access to a law library.  (Doc. # 15).  Equitable tolling is an extraordinary remedy that, if available, is only sparingly applied.  *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990).  The Fifth Circuit has held that the statute of limitations found in the AEDPA may be equitably tolled at the district court's discretion where "exceptional circumstances" are present.  *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000). As the Fifth Circuit has explained, the doctrine of equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights."  *Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)).

The Supreme Court has recently stated that district courts have no authority to create "equitable exceptions" to statutory time limitations.  *See Bowles v. Russell*, — U.S. —, 127 S. Ct. 2360, 2366 (2007).  Assuming that the AEDPA allows it, the Supreme Court has observed, nevertheless, that a habeas corpus petitioner is not entitled to equitable tolling unless he establishes "(1) that he has been pursuing his rights diligently, and (2) 'that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, — U.S. —, 127 S. Ct. 1079, 1085 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  The petitioner's proposed grounds for equitable tolling are discussed separately below.

5

### 1.      Mental Illness as Grounds for Equitable Tolling

White reports that he has been diagnosed with schizophrenia or "schizoaffective disorder" that is treated with several prescription medications, including "Benztropine, Mesylate, Haloperidol, and Nortriptyline." (Doc. # 1, Exhibit 7, Correctional Managed Care Mental Health Services Psychiatric Assessment).   White contends, therefore, that he is entitled to equitable tolling on the grounds that he suffers from a mental impairment.

In *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001), the Fifth Circuit "recognized the possibility that mental incompetency might support equitable tolling of a limitation period."   The petitioner in *Fisher* was confined to a psychiatric ward, medicated, separated from his glasses and hence rendered legally blind, denying him meaningful access to the courts. *Id*. at 715.   The Fifth Circuit denied equitable tolling in that case, however, finding that the petitioner still had an opportunity to work on a federal habeas corpus petition during the limitations period.   The Court reasoned that "a brief period of incapacity during a one-year statute of limitations, even though rare, does not necessarily warrant equitable tolling."   *Id.*

More recently, in *Roberts v. Cockrell*, 319 F.3d 690, 695 (5th Cir. 2003), the Fifth Circuit found equitable tolling inapplicable where an inmate was hospitalized thirteen times in a one-year period.   In that case, the Fifth Circuit concluded that the petitioner failed to "suppl[y] the necessary details concerning his hospitalizations, such as when and for how long and at what stage of the proceedings they occurred, so as to allow a determination of

whether they could have interfered with his ability to file his § 2254 application in a timely manner." *Id.*

In this case, White does not provide any details about his mental impairment or how it affects him. Although he attaches medical records along with his petition, these exhibits do not demonstrate that he was incapacitated in 2004 or thereafter. In fact, the exhibits that White presents describe him as functional. (Doc. # 1, Exhibit 7, Correctional Managed Care Mental Health Services Psychiatric Assessment). White does not allege facts showing that mental illness prevented him from timely pursuing federal habeas corpus relief from his guilty plea. In that regard, White fails to provide necessary details showing that his mental impairment prevented him from managing his affairs or understanding his legal rights and acting upon them before the one-year statute of limitations expired. Absent a showing that White was prevented from filing a federal petition in a timely manner due to mental incapacity or incompetency during the relevant time period, he is not entitled to equitable tolling. *See Roberts*, 319 F.3d at 695; *see also Lawrence v. Florida*, — U.S. —, 127 S. Ct. 1079, 1086 (2007) (finding that the petitioner made "no factual showing of mental incapacity" and, therefore, fell far short of establishing the "'extraordinary circumstances' necessary to support equitable tolling").

### 2.     Lack of Legal Training and Adequate Access to a Law Library

White contends further that, as an indigent inmate, he is entitled to equitable tolling because he lacks a law degree. Although White has represented himself on state habeas corpus review and in this federal proceeding, the Fifth Circuit has held that a prisoner's *pro*

*se* status does not excuse an untimely federal habeas corpus petition.  *See Lookingbill v. Cockrell*, 293 F.3d 256, 264 n.13 (5th Cir. 2002), *cert. denied*, 537 U.S. 1116 (2003); *see also United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993) (holding that *pro se* status, illiteracy, deafness, and lack of legal training are not external factors excusing abuse of the writ).  The petitioner's incarceration and ignorance of the law do not otherwise excuse his failure to file a timely petition and are not grounds for equitable tolling.  *See Fisher v. Johnson,* 174 F.3d 710, 714 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *see also Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir.) (noting that a petitioner's ignorance or mistake is insufficient to warrant equitable tolling), *cert. denied*, 539 U.S. 918 (2003).

White also alleges that he was denied adequate access to the law library because he was only allowed access to the law library for two hours a day for six days out of the week. White does not provide any details in support of this claim and he does not otherwise show that he was prevented from researching a particular legal issue.  Even assuming that White's access to legal books and materials is limited, the record does not support an exercise of discretion in his favor because it does not appear that he was diligent in pursuing his claims. The record reflects that White's guilty plea became final in February of 2005, but that he waited well over a year, until October 23, 2006, to file a state habeas corpus application to challenge the plea.  Further, after the Texas Court of Criminal Appeals denied relief on March 21, 2007, White waited almost three more months to execute his federal habeas corpus petition on June 16, 2007.  White's federal habeas corpus petition is not significantly different from the one that he filed in state court. White offers no valid explanation for this

delay.  It is well established that equitable tolling is not available where, as here, the petitioner squanders his federal limitations period.  *See, e.g., Ott v. Johnson*, 192 F.3d 510, 514 (5th Cir. 1999), *cert. denied*, 529 U.S. 1099 (2000).

The doctrine of equitable tolling is applied "restrictively" and, as the Fifth Circuit has held repeatedly, "is entertained only in cases presenting 'rare and exceptional circumstances where it is necessary to preserve a [petitioner's] claims when strict application of the statute of limitations would be inequitable.'" *In re Wilson*, 442 F.3d 872,  875 (5th Cir. 2006) (quoting *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002) (internal quotation and alteration omitted)).  Given the petitioner's lack of diligence, the Court concludes that his circumstances are not among those "rare and exceptional" conditions which warrant deviation from the express rules that Congress has provided.  *See Felder*, 204 F.3d at 173.  White has not established that he is entitled to equitable tolling and, therefore, his petition must be dismissed as barred by the governing one-year limitations period.

## III.    MERITS — THE PETITIONER IS NOT ENTITLED TO RELIEF

Alternatively, assuming that the petition is not barred by limitations, the respondent argues that White is not entitled to a federal writ of habeas corpus under the governing standard found in the AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996).  Embodying the principles of federalism, comity, and finality of judgments, the AEDPA "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S.

1067 (2001).  Specifically, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).

The federal habeas corpus statutes require applicants for relief to first present their claims in state court and to exhaust all state court remedies through proper adjudication.  28 U.S.C. § 2254(b).  To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies.  If a claim has not been adjudicated on the merits in state court, federal review is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.), *cert. denied*, 516 U.S. 1005 (1995).  The procedural default rule also prevents habeas review when a petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance.  *See Coleman*, 501 U.S. at 730; *Rosales v. Dretke*, 444 F.3d 703, 707 (5th Cir. 2006) (noting that the procedural default rule prevents habeas petitions from avoiding the exhaustion requirement by defaulting their federal claims in state court).

In this instance, White contends that he is entitled to federal habeas corpus relief from his guilty plea to the aggravated assault charges against him because he was denied effective assistance of counsel.  White raised similar claims in a state application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure.  In that application,

10

White alleged that he was denied effective assistance of counsel during his guilty plea proceeding because his attorney failed to conduct an adequate investigation.  The state habeas corpus court, which also presided over White's guilty plea, entered findings of fact and concluded that White was not entitled to relief.  The Texas Court of Criminal Appeals agreed and denied relief without a written order.  *See Ex parte White*, No. 67,070-01 (Tex. Crim. App. March 21, 2007).  Thus, White's state application was denied on the merits.

For claims adjudicated on the merits, the AEDPA provides that a petitioner is not entitled to relief unless the state court's ultimate decision:

1.    was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.    was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d);  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (observing that the AEDPA standard is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning") (citation omitted), *cert. denied*, 535 U.S. 982 (2002). The burden is on the petitioner to show that he is entitled to relief under the highly deferential AEDPA framework.  *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).

Claims presenting pure questions of law and mixed questions of law and fact are governed by § 2254(d)(1).  *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001).  The Supreme Court has clarified that "clearly established Federal law" or precedent for purposes of § 2254(d)(1) "refers to the holdings, as opposed to the dicta,"

of decisions from the United States Supreme Court "as of the time of the relevant state-court decision." *Carey v. Musladin*, — U.S. —, —, 127 S. Ct. 649, 653 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   A state court decision is "contrary to" clearly established precedent if the state court arrives at a conclusion opposite to one reached by the Supreme Court on a question of law or if the state court decides a case differently from the Supreme Court "on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application" of clearly established precedent if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case.  *Id.*

Pure questions of fact are governed by § 2254(d)(2).  *See Martin*, 246 F.3d at 475. In addition, a state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)).  This deference extends not only to express findings of fact, but to the implicit findings of the state court.  *See Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).  The petitioner's claims are addressed below under the governing standard.

### A.    Petitioner's Guilty Plea

As the respondent correctly notes, a review of White's petition is constrained by his guilty plea, which is presumptively valid.  As a general rule, "[a] voluntary and intelligent

plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). Likewise, "a plea's validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal." *Bradshaw v. Stumpf*, 545 U.S. 175, 186 (2005). The validity of a guilty plea may be challenged only on the grounds that it was made on the constitutionally defective advice of counsel or that the defendant could not have understood the terms of the bargain he agreed to. *See id.* (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

White challenged the validity of his guilty plea on state habeas corpus review, alleging that his plea was involuntarily made. The state habeas corpus court, which also presided over White's guilty plea, rejected this claim. *See Ex parte White*, No. 67,070-01 at 151. The state habeas corpus court found that White failed to overcome the presumption that his guilty plea was knowing and voluntary. *Id.* (citing *Wilson v. State*, 716 S.W.2d 963, 956 (Tex. Crim. App. 1986); *Fuentes v. State*, 688 S.W.2d 542, 544 (Tex. Crim. App. 1985)). The state habeas corpus court further found, specifically, that White "fail[ed] to show that his guilty plea was unlawfully induced, made involuntarily, or made without an understanding of the nature of the charge against him and the consequences of his plea." *Id.*

The record supports the state habeas corpus court's findings and conclusions. The record reflects that White pleaded guilty to aggravated assault with a deadly weapon as alleged in the indictment. In doing so, White confessed that he assaulted the victim by unlawfully, intentionally, and knowingly causing bodily injury to the victim by using a

deadly weapon, namely, a knife. *See Ex parte White*, No. 67,070-01 at 156.  White declared under oath, in writing and in open court, that his decision to plead guilty was voluntary and that he understood the nature of the charges against him, as well as the applicable range of punishment. *See id.*  White's written judicial confession and waiver of constitutional rights is also signed by White's defense counsel, the prosecutor, the Clerk of Court, and the presiding judge, who expressly ascertained that White appeared competent and that he "knowingly and voluntarily" entered his guilty plea "after discussing the case with his attorney." *Id.*

The record also contains detailed written admonishments explaining the nature of the charge against White and potential punishment that he faced. *Id.* at 158-64.  In these written admonishments, White stipulated that he was "mentally competent" and that he understood the nature of the charge against him. *Id.* at 162.  White stated that he fully understood the consequences of his plea "after having fully consulted with [his] attorney," and he asked the trial court to accept the plea. *Id.* at 163.  White stated further that he "freely, knowingly, and voluntarily" executed the admonishments, the judicial confession, and the constitutional waivers "in open court with the consent of and approval of [his] attorney." *Id.*  White concluded by saying that he understood the trial court's admonishments, that he was "mentally competent to stand trial," and that his plea was "freely and voluntarily made." *Id.* These records show that White was advised of the charges, as well as the consequences of his plea, that he was competent, and that his decision to plead guilty was voluntary and informed.

14

The Supreme Court has recognized that the various advantages of the plea bargaining system "can be secured . . . only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977).  Thus, "the representations of the defendant, his lawyer, and the prosecutor at [the original plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Id.* at 74.  The allegations made by White in his federal habeas corpus petition are conclusory and do not overcome this barrier.  In that regard, the state habeas corpus court's findings on the issue of voluntariness are entitled to the presumption of correctness on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1); *Patterson v. Dretke*, 370 F.3d 480, 484 (5th Cir. 2004); *Roberts v. Dretke*, 356 F.3d 632, 639 (5th Cir. 2004). White, who presents nothing more than his own bare allegations that his plea was rendered involuntary by his counsel's inadequate pretrial investigation, fails to meet his burden to rebut the presumption with clear and convincing evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1).

In summary, White has not shown that his guilty plea was involuntary or unknowingly made.  For reasons addressed further below, White further fails to show that his guilty plea was invalid or coerced as the result of ineffective assistance of counsel.  It follows that White has not shown that the state court's decision to reject his claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  *See* 28 U.S.C.

§ 2254(d)(1).  Accordingly, White is not entitled to a federal writ of habeas corpus on this issue.

**B.     Ineffective Assistance of Counsel**

As noted above, White alleges that his guilty plea was invalid because his attorney failed to conduct an adequate pretrial investigation.  The state habeas corpus court rejected this claim, finding that White "fail[ed] to show that trial counsel's conduct fell below an objective standard of reasonableness and that, but for trial counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceedings would have been different."  *Ex parte White*, No. 67,070-01 at 151 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard)).

The record shows that the state habeas corpus court identified the correct standard that governs White's ineffective-assistance claim, following the two-prong test found in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on an ineffective-assistance claim, White must establish both of the following two elements of the *Strickland* test: (1) that counsel's representation was deficient, such that it "fell below an objective standard of reasonableness," and (2) that the deficient representation caused prejudice, which requires a showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Williams v. Taylor*, 529 U.S. 362, 390-91 (2002) (quoting *Strickland*, 466 U.S. at 688).

16

To establish deficient performance under the *Strickland* standard, the petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689), *cert. denied*, 543 U.S. 1056 (2005). Performance is prejudicial only if, but for counsel's errors, there is a reasonable probability that the final result would have been different and confidence in the reliability of the verdict has been undermined. *See Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005) (citing *Little v. Johnson*, 162 F.3d 855, 860-61 (5th Cir. 1998)).

In this case, White alleges that he received ineffective assistance in connection with a guilty plea. The Supreme Court has held that the two-part *Strickland v. Washington* test applies where a defendant challenges a guilty plea based on ineffective assistance of counsel with the following modification:

> The second, or "prejudice," requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

17

*Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  Thus, a petitioner must establish: (1) that his attorney erred and that but for the error he would not have pleaded guilty; and (2) he must sufficiently undermine confidence in the outcome to illustrate that counsel's deficient performance caused the outcome of the proceeding to be unreliable or the proceeding to be fundamentally unfair.  *Del Toro v. Quarterman*, 498 F.3d 486, 490 (5th Cir. 2007) (citing *Armstead v. Scott*, 37 F.3d 202, 207 (5th Cir. 1994), *cert. denied*, 514 U.S. 1071 (1995)); *see also Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (emphasizing that *Strickland*'s prejudice prong requires the petitioner to demonstrate that "counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair").

In his pending federal habeas petition, White alleges that his attorney was deficient for failing to investigate his mental health history prior to the guilty plea, suggesting that his attorney should have requested a psychological evaluation.  White presents a series of medical and psychological records along with his petition which show that, prior to entering his guilty plea in 2004, he was treated at a local psychiatric facility for "polysubstance abuse" in 1993, and that he fell from a roof in 2003, suffering a closed head injury.  After he entered his guilty plea and was admitted to TDCJ, White was diagnosed with schizophrenia or schizoaffective disorder.  White complains that his attorney was deficient for failing to discovery this evidence of his mental illness.

The record, which features a detailed, twenty-two page affidavit from White's counsel, refutes White's allegation of deficient performance.  White was represented in connection with the aggravated assault charges against him by local criminal defense

18

attorney David Mendoza, Jr. ("Mendoza").  According to his affidavit, Mendoza has been board certified in criminal law by the State Bar of Texas since 1984.  *See Ex parte White*, No. 67,707-01 at 127.  Mendoza was the presiding judge of Harris County Criminal Court at Law No. 11 for eight years before returning to private practice.  *See id*.  Mendoza reports that, as an attorney and a judge, he has handled "over 30,000 criminal cases" in the Texas courts.  *See id*.

In response to White's allegations of ineffectiveness, Mendoza reports that he was retained by White's mother (Mrs. Marianne Hilton) and brother-in-law (Donald Jenkins). *See id*.  Mendoza learned from these family members that White "had been in trouble with the law several times and was an ex-con," and that he had recently disassociated himself as a member of "the Banditos" (a street gang).  *See id*. at 128.  Mendoza stated that he met with White, who was in jail without a bond, after reviewing the complaint and the probable cause affidavit in his aggravated assault case.  *See id*. at 130.  During their initial meeting, Mendoza discussed the details of the assault in which White stabbed another individual at a bar.  *See id*.  White explained that some "guys were mad at him and hassling him" while he was sitting at the bar with a girlfriend and that one of them threatened him with a beer bottle.  *See id*. at 130-31.  White stated that he argued with the complainant, who took a swing at White with his fist.  *Id.* at 131.  White admitted that he stabbed the complainant, who he knew was unarmed.  *Id.*  Mendoza explained that self-defense was not available because White stabbed the complainant with a deadly weapon when he knew the complainant was not armed: "You can't use deadly force against someone trying to hit you

19

with fists." *Id.* White reportedly offered to lie and say that he thought the complainant was "trying to reach for a weapon," but Mendoza told him that this was not acceptable. *Id.*

Outlining the discovery that he performed, Mendoza states that he went to the scene of the offense, which was a bar named "Risky Business." *Id.* at 134. There, he made a diagram and took some photos. *Id.* Mendoza visited the premises twice, once during the day and another time at night to check the outdoor lighting at the scene near the bar where the stabbing occurred. *Id.* at 134, 135. Mendoza did a "background check" on White and on one of the witnesses. *Id.* at 131. Mendoza reportedly spent four hours reviewing the District Attorney's file, taking notes from the police reports and witness statements. *Id.* at 132. During this review, Mendoza discovered that several of the witnesses offered a somewhat favorable account of the assault. *Id.* at 133. More than one witness observed that the complainant had, in fact, struck at White with his fist. *Id.* The complainant also admitted swinging at White with his fist. *Id.* Still, Mendoza was not optimistic about the success of a self-defense theory if the case went to trial. *Id.* One of the witnesses, Jerry Jacobs, stated that he witnessed the assault and "saw clearly [that] [the] complainant did not have [a weapon]" and that White knew the complainant was unarmed. *Id.* at 139.

In light of this information and White's own statement that he knew the complainant was unarmed when he stabbed him, Mendoza explored a possible plea agreement. *Id.* at 134. Because the District Attorney had already offered a four-year sentence in White's pending retaliation case, Mendoza estimated that the prosecutor would offer somewhere between eight to ten years in the aggravated assault case. *Id.* Mendoza told White that, because of

20

his prior criminal record, White faced a potential sentence of five to ninety-nine years or life in prison if convicted at trial. *Id.* White allegedly asked Mendoza to "try to get me under ten [years in prison]." *Id.*

Mendoza explained that, on January 16, 2004, the Assistant District Attorney in charge of White's retaliation and aggravated assault cases (cause numbers 963758 and 967358) made a "package-deal offer" of four years' imprisonment in the retaliation case, running concurrently with six years' imprisonment on the aggravated assault case. *Id.* at 141. Mendoza relayed the offer to White, who accepted the four-year offer on the retaliation charge but asked whether the self-defense theory had any potential to avert a conviction in the aggravated assault case. *Id.* Mendoza explained to White that a self-defense theory would be "an uphill battle" because of White's concession that he stabbed the complainant even though he knew that he was unarmed. *Id.* When White asked for a recommendation, Mendoza advised him to take the deal but told White that he was ready to go to trial and that it was his choice whether to proceed or not. *Id.* at 142. White ultimately decided to accept the package-deal offer of concurrent four-year and six-year prison terms. *Id.*

Regarding White's claim that he suffered from a mental illness that affected his ability to plead guilty, Mendoza states that he asked White to tell him about the case during two initial interviews, and that he also asked White to tell him about himself, about his prior criminal record, and about his family. *Id.* at 143. In addition, Mendoza asked White about "any current mental problems" and White reportedly replied that he was "depressed" about a recent death in the family. *Id.* at 144. Mendoza asked White if he had ever been treated

for "mental disease or mental defect" and White answered "no." *Id.* Mendoza asked White

if he had ever been to a mental hospital or facility for mental disease. *Id.* White said "no,"

but reported that he had been at "Ben Taub [Hospital] for drugs." *Id.* When Mendoza asked

him to elaborate, White explained that he had been "high on drugs and they made [him] go

to the hospital," where he stayed for three days. *Id.* Mendoza asked White if he had ever

been to "re-hab" or received any other treatment for drug abuse. *Id.* White replied that he

had not. *Id.* White told Mendoza that he had "[fallen] off a house" and that he had been

hospitalized, but White told Mendoza that he was "O.K. now[.]" *Id.*

Regarding White's mental history, Mendoza stated that he first observed White while

he was at the jail "for a new felony that he picked up while on bond for another felony,"

referencing the pending retaliation case. *Id.* Mendoza stated that White told him he was

"drunk and on drugs" when he committed the retaliation offense. *Id.* Mendoza spoke to

White's lawyer in the retaliation case, John Donahue, prior to the guilty plea proceeding.

*Id.* at 145. During their discussion, Donahue never raised the issue of White's mental health

or mention any concerns about "sanity" at the time of the offense or "competency" to stand

trial.[4] *Id.* Based on his personal observations, Mendoza saw "no basis to request that the

---

[4]      There is also a detailed affidavit from Donahue in the record. *See Ex parte White*, No.
67,070-02 (supplemental record). Donahue, who represented White in connection with the
retaliation charge lodged against him in cause number 963758, reports that there was nothing
in White's "behavior, speech, or thought processes" on January 15, 2004, which led him to
believe that White was "suffering from any mental, physical or emotional problem that
interfered with his ability to understand what he was charged with, the consequences of his
plea, or to assist in his defense." *Id.* Donahue stated further that White never mentioned any
psychiatric problems and he did not claim that the retaliation case or the aggravated assault
(continued...)

court order a psychiatric exam as to [White]'s competency or sanity." *Id.*  Mendoza reports that he "spoke to [White] for several hours during our visits and he was always cooperative and seemed completely competent[.]" *Id.*  Mendoza also asked White's brother-in-law "about whether he knew of any mental history regarding [White] given the fact that he had a criminal history, was a recently defrocked ex-Bandito, and now had [three] new cases." *Id.* White's brother-in-law reportedly replied, "no, he's not crazy, he's just mean." *Id.*

Based on his discussions with White and after considering all the circumstances surrounding the assault case, Mendoza did not consider White's actions to rise "to the level of potentially psychotic behavior which would cause [him] to consider filing a motion for the court to order a psychiatric exam as to competency and/or sanity." *Id.*  Rather, Mendoza considered the facts of White's case "to be a rather ordinary aggravated assault case, where one person for a good reason, or for no good reason, decides to injure another person with a weapon." *Id.*  Mendoza concluded that, "[o]verall, [White] appeared to be fully competent and although he had an anti-social history of behavior, [Mendoza] didn't believe that he had a history of mental illness." *Id.*

The state habeas corpus court found that the facts asserted in Mendoza's affidavit were "true," that the affidavit was "credible," and that Mendoza's factual account together

---

4(...continued)
charge was "the result of a mental defect, disease or other psychiatric condition." *Id.*
Donahue added that White "calmly" provided the details of the charges against him and that
his behavior during their meetings did not give him "any reason to believe that [White] was
insane at the time of either offense." *Id.*

23

with the official trial court record showed that the "totality of the representation afforded [to White] was sufficient to protect his right to reasonably effective assistance of counsel." *Ex parte White*, No. 67,070-01 at 151, 152. A federal habeas corpus court must defer to a state court's findings of fact, which are entitled to the presumption of correctness found at 28 U.S.C. § 2254(e)(1). *See Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001), *cert. denied*, 537 U.S. 883 (2002). A reviewing court must also defer to credibility findings made by the finder of fact. *See id*. at 948, n.11. The state court's credibility findings are particularly strong where, as here, the state habeas corpus court also presided over the petitioner's guilty plea proceeding. White does not meet his burden to rebut the presumption of correctness with clear and convincing evidence in this instance.[5] *See* 28 U.S.C. § 2254(e)(1). In addition, White has not shown that the decision reached was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d)(2).

This record shows that Mendoza conducted ample discovery in an attempt to present a theory of self-defense on his client's behalf and that Mendoza also asked his client about his history, if any, of mental disease or defect. White does not allege any facts showing that

---

[5] There is a lengthy affidavit from White in the state court record, which contains objections to the affidavit submitted by Mendoza. *See Ex parte White*, No. 67,070-01 (supplemental record). White's affidavit, however, consists mainly of conclusory argument that fails to refute Mendoza's detailed account of his trial preparation. *See id*. If anything, the affidavit tends to show that White was fully capable of expressing himself and that he was not incapacitated by mental illness or unable to pursue habeas corpus relief as he claims in support of his request for equitable tolling of the AEDPA statute of limitations in this case.

Mendoza knew, but disregarded, evidence of mental illness that should have caused him to investigate further. Likewise, White fails to specify what additional investigation would have revealed or how it would have changed the outcome of his proceeding. *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Thus, White fails to show that his counsel was deficient for failing to conduct an adequate investigation.

Even assuming that his counsel was deficient for failing to conduct sufficient discovery on the issue of mental illness, White fails to allege any facts showing that additional information about his mental health would have made a difference. In that respect, White does not allege that, but for his counsel's failure to conduct adequate discovery regarding his mental health, he would not have pleaded guilty and would have insisted on a trial. Accordingly, White also fails to demonstrate that he suffered the requisite actual prejudice as a result of his counsel's performance.

Based on this record, White has not established that he received ineffective assistance of counsel or that his guilty plea was tainted by his attorney's failure to conduct an adequate investigation. It follows that White fails to show that the state habeas corpus court erred by rejecting his claim or that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. Accordingly, White is not entitled to a writ of habeas corpus on this issue.

## IV.    CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

26

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner states a valid claim.  Therefore, a certificate of appealability will not issue.

## V.   CONCLUSION AND ORDER

Therefore, based on the foregoing, the Court **ORDERS** as follows:

1.   The federal habeas corpus petition is **DISMISSED** with prejudice.

2.   A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on November 29th , 2007.

Nancy F. Atlas
United States District Judge

27